Warden, oral argument not to exceed 15 minutes per side, Mr. Elser for the petitioner, appellant. Good morning. May it please the court, my name is David Kelser from the Federal Defender Office in Flint. I'm representing petitioner Samuel Ambrose. Mr. Ambrose has been in Michigan State Prison for 36 years now. This case arose out of a bar fight when he was 18. I think he's either 53 or he's turned 54 now. This was a bar fight, it resulted in the death of the other person, and the question has always been whether it was murder or manslaughter. This is a habeas case, a 2254 case. Both of the issues that have been certified by the district court relate to that murder-manslaughter type issue. The original issue that I was appointed on related to the ineffective assistance in plea bargaining, the Cooper Frye issue that I'm sure you've seen repeatedly. There's also a jury instruction issue that the district court, while I disagree with his reversal of the magistrate judge's grant, the district court, if you will, threw an extra bone and certified the jury instruction issue. The problem with the jury instruction at this trial, which again took place in 1979, is the sequence of instructions. The state concedes, and I think everyone would agree, that there's no dispute that the initial instruction was error. The court, the judge, instructed the jury that in order to consider manslaughter, you have to first determine whether there was second degree murder. In other words, the required intent to kill or whatever the state. Let me see if I can help you out here. I don't think there's any dispute that there was an error. I don't think there's any dispute that it was at least initially corrected. Correct. This seems to be then, your claim is, that the third time this came up, which was by and large in response to a question that the jury asked, that the error was repeated. And I just simply don't see that. You read what the judge said and you put it in the context of everything else he had said, you make a flat out statement the error was repeated. But that's not corroborated, at least as I review the language, so if you could just get to why the third time around he repeated the first error, that would probably dispose of that issue. Certainly, your honor. Later, Justice Riley thought that the error was repeated. In fact, that was the entire basis of her dissent, was that the error was repeated. We don't normally follow dissents in Supreme Court cases, you probably have figured. I understand that, your honor. But the language is, he does correct the error, 15 minutes later, the jury requested re-instruction, and then the judge says, however, if you find that the Defendant's Act did not amount to such criminal purpose, aimed against life, you must find the defendant not guilty of murder and consider whether or not he is guilty of manslaughter. It sets up again that order, that if you find one thing is deficient, then you go on to the second. I think that that was error, and I think... So essentially you're saying that that somehow overrode just having told them repeatedly that they can do it in any order they want. That's correct, your honor. And Francis v. Franklin, U.S. Supreme Court case... Now, we have to apply EDPA deference, do we not, to the decision of the state court that that, viewed in context, was not error? That's fair to say, your honor. You know the deferential standard the Supreme Court keeps over and over imposing upon this particular circuit? I'm well familiar with it, your honor. So how do you get by that? Your honor, well, I think Francis v. Franklin, the U.S. Supreme Court case does help, because in that case it was clear that that erroneous instruction was corrected. In other words, the last word in Francis v. Franklin was the correct instruction, and even then it was found to be error. I would suggest that our case is stronger, because I'm not saying that the last word was corrected and therefore they could have gone either way. I'm saying the error was repeated and then not corrected. If it had been corrected again, I suppose I'd have no issue, because the last thing that would have happened would have been a correction. So I would submit that Judge Riley had the better argument, and I think that it was important in some of the same ways as the other issue, because the distinction between murder and manslaughter is all over this case. It's a very close case. The jurors came back with specific questions about murder and manslaughter, so they were obviously grappling with that question throughout the entire proceedings. So I think to the extent that it's close, whether the error was repeated or obvious, I think given the centrality of the issue of murder-manslaughter, I would suggest that it is. And I would submit to you, when something is close like that, that it's almost impossible for there to be a reversal given at pedeference. I understand. We're not setting up here as arbitrators as to whether they got it right in connection with a close call. That's the antithesis of that pedeference. I understand, Your Honor. I'm familiar with that. I just believe with the importance of this issue to his right to a fair trial in a homicide case, I think that when an admittedly erroneous instruction is repeated, I think that it's a… Now, if I could also ask you about the plea offer, because I'm troubled by that claim as well. Yeah, I was going to just get to that. It seems to me, reading all of this material, there was absolutely a different claim made before to the state courts, and you've changed it around. It's morphed, and it's morphed into, I knew about it all along, I communicated my acceptance, and my lawyer didn't communicate it to the state. Well, Your Honor… That is not the claim that was expressly raised below. So how do you get by exhaustion, procedural default, and you haven't even pled cause and prejudice? Well, I don't think cause and prejudice comes in except if we lose the plea. If you haven't exhausted and you can no longer exhaust, then it's procedurally defaulted. My argument is… You can't get around that other than cause prejudice or actual innocence. Right, but I'm not trying to get around it because I think it was preserved. I think to take a prisoner's pleadings where he alleges at every turn that his lawyers did not properly assist him in implementing this plea offer, which is evidenced in the record, I think that… But you can't exhaust by a general statement. My lawyers didn't help me. You've got to say the means in which they didn't help you. And what he said was that there was a plea offer they didn't tell me about. And if I had known about it, I would have accepted it. There's no real factual dispute about what I just said, is there? Well, Your Honor, looking at the pages that we were ordered to file supplemental briefs on essentially in part this issue, and pages 3 to 5 of that brief, I deal with it. But in a nutshell, as early as 1999, which is a long time ago, long before any kind of district court decision, he wrote in his letter to the judge that he admitted in that letter that there was a discussion of the plea offer and that it was not timely implemented. Certainly not always artfully worded, but also in 2005, later, again before even the order that is alleged to be deferred to, that his lawyers failed to convey his approval of the authorized plea offer. And as I indicated, those are discussed in some detail at pages 3 to 5 of the supplemental brief. His writing is not always clear. Does that excerpt omit the following sentence, which says, This information was withheld from me until after the trial? I don't know, Your Honor. What page are you at? Well, page ID 1861. I mean, it's your site. I just wonder whether it's clipped out of context. I'm reading from a memo. I don't have the exact thing before me, but that's what it appears to say. That would change the context of it, wouldn't it? Well, not necessarily if he's writing about it after the trial, but certainly, I mean, his language is not always crystal clear, but the case If that was the next sentence in the quote, then that would suggest that this excerpt doesn't really do what you're trying to get it to do. Well, I don't think it's that strong. I think it could be argued that it undercuts it, but I don't think it takes it away. I think Pellett is the 1987 case from this court where this court held that there was nowhere near the same issue raised. In fact, in those cases, there was some evidence of an expert was alleged to be the ineffective assistance, and the issues he raised had nothing to do with that. Here, we're talking about finer points, niceties, between specific allegations of ineffective assistance in the context of plea bargaining, in the context of his lawyers assisting him. He raised these issues long before Cooper Fry. I mean, we all know Cooper Fry was a bit of a sea change, applying ineffective assistance in the plea bargaining context, but he was raising this issue long before, as early as 1999, and repeating it again in 2005. Whether he worded it exactly right based on subsequent law is another issue, but I think that he did. It's not just a wording change to have to identify a distinction between not getting the information and not relaying his response to the information. You're saying, well, that's all kind of information, so... Well, I think it would qualify as raising the issue. There's cases out there where the... Just the generality of, there's a problem with plea bargaining is enough to raise... No, specifically my lawyer assisting me in implementing a plea offer that is evidenced on the writing where the judge writes manslaughter 5 to 15 and initials it. That's where you're, at least arguably, tripped up by your cite to page 1861, so let me just read it to you again so you can think about that before you come back for rebuttal. It talks about, he says, his own words, the Wayne County Prosecutor's Office made the plea offer, but my attorney did not convey the plea offer to me in a timely fashion. This information was withheld from me until after the trial. That's from him. I understand. So now he's changed the characterization of this, well, I knew about it all along, and I told them to accept it and they didn't accept it, which is diametrically opposite of his own words. I would suggest it's not diametrically opposite, but I understand the court's distinction. All right, well, why don't you think about that, because it seems to me that's a pretty big problem you have. May it please the court, Raina Korbakis from the Michigan Attorney General's Office, on behalf of Respondent Appalee Kenneth Romanowski. I'd briefly like to say before I start that I disagree with the characterization of the underlying crime as a bar fight, in the sense that there was no trading of blows. The record here shows that Petitioner Samuel Ambrose viciously beat 32-year-old after knocking him down and then repeatedly hitting, kicking, and stomping on him for over a period of time. The victim sustained multiple blunt injuries to his head and neck and ultimately died. The two issues before the court are a jury instruction claim and the ineffective assistance claim. I'd like to focus on the ineffective assistance claim because the jury instruction claim is procedurally straightforward and it's undisputed that AEDPA deference applies, and the state submits at the Court of Appeals ruling on that issue was not an extreme malfunction. As to the ineffective assistance claim, Petitioner's current claim that his attorneys failed to convey his acceptance of the plea to the prosecutor is procedurally defaulted, because, as Judge McKeague noted, the claim has morphed through the years, beginning from the pleadings in the state court, to his habeas petition, to his testimony at the hearing. It's sort of a... morph makes it sound like it just sort of accreted and grew, but I'm getting the impression that at a particular point in time it just changed. It changed. It changed. What was the point at which it changed? Well, initially in 1996, the claim was that his attorneys, and at first he said it was trial counsel, but then he added pre-trial counsel, failed to convey the plea. He argued that through 2005, where he added a claim that trial counsel was ineffective for failing to convey the trial judge's acceptance. After that, he added a chronic claim, and in his habeas petition he only raised a chronic claim. He never alleged anything about failing to convey a plea, and he never mentioned Strickland. When we finally get to the evidentiary hearing, he's claiming that both attorneys talked to me about the plea before trial. He indicated that he accepted, and that they didn't convey that acceptance. So through the years... So the morph, as you put it, from I wasn't told to they didn't convey my acceptance, occurred at the evidentiary hearing in the habeas proceeding? Right. That's when that appeared. That appeared post-evidentiary hearing for the first time. Did you all point out at that point that this was a new claim? Yes, Your Honor. In response to his post-hearing brief where he first alleged the claim, we responded that that new claim is defaulted. And the default is set forth in our brief in great detail. The district court, though, didn't focus on that concern or that position? The district court didn't address, was focusing on the failure to convey the plea claim. The district court didn't acknowledge the distinction between the claims and really didn't address our argument that it was this new claim that was defaulted. That's what I asked. Yes. You said this is a new claim, and the district court continued, from all you could tell, to treat it as the same claim. Yes, that's exactly right.  That's exactly right. Thank you. This court should enforce the default as to the new claim, but even if the court decided to bypass the default, habeas relief would not be warranted even under de novo review. And the key problem for Petitioner in this case is that he hasn't established the factual predicate for his ineffective assistance claim, and that is that a formal plea offer was made by the prosecutor. And in the absence of a factual predicate, his ineffective assistance claim must be rejected, and this court said that in Vincent v. McLemore case 226FAPPX582. Petitioner's evidence that a plea existed is the handwritten note on the pre-trial notice, which said manslaughter 5 to 15 and had presumably the judge's initials, but that could mean any number of things. It could reflect what the petitioner wanted for an offer, what the trial judge at the time would give if the prosecutor had made an offer, informal nonbinding discussions between the parties or the trial judge's recommendation for a plea, any interpretation of what that notation meant. Well, it could have also meant that there was an offer. I mean, it's just one of many possibilities of what that notation meant. It could, but it's pure explanation. I mean, speculation as to what that meant, and there's nothing in the... So am I right that the analytical way we get to this is he's got this Strickland claim, he's got to show deficient performance and prejudice. There can't be prejudice if there wasn't actually a plea offer. The evidence that he relies upon, those notations that nobody knows what they meant, has been interpreted by the state court. That state court interpretation under epidefference can't be deemed to be the same extreme malfunction that we talked about with the jury instructions. That's how you get there from your perspective, right? Correct, that is. There's no other evidence in the record, in the trial court record, that the prosecutor had offered a plea or wanted to offer a plea. There was testimony at the hearing from former prosecutors around that same time speaking generally about the plea bargaining process, and they testified that formal plea offers would be in writing back then and they would be in the court file. Petitioner has had a copy of that court file since 1984 and has never produced any such documentation. There was also testimony that the prosecutor's office back in 1979 used specific forms for making their formal plea offers and that the re-pre-trial notice, like the one here, was not the type of form that they used. Petitioner's testimony that the plea offer existed and that he conveyed his acceptance to the trial attorneys is suspect and not credible for two reasons. First, his unexplained delay in even mentioning that a plea offer existed. Petitioner didn't raise any claim about a plea until 17 years after his conviction. It's remarkable that he'd wait all these years to bring up a claim that his two trial attorneys disregarded his wish to accept a plea, and he never mentioned anything about it at the trial, at sentencing, or even on direct appeal. And in McQuiggan v. Perkins, the Supreme Court said in the statute of limitations context that an unexplained delay in presenting new evidence bears on the credibility of evidence proffered to show actual innocence. Again, in the statute of limitations context, but petitioner's unexplained delay here should bear on the credibility of his claim. And also, another reason to cast doubt on the credibility are all the contradictions. For years, he's argued that his trial attorneys failed to convey the plea and that he didn't find out about the plea until after trial and that he would have accepted it if he'd known about it. But now at the hearing, he says he knew about the plea early on. He discussed it with both attorneys before trial. He told them he wanted to accept it. All these contradictions in his arguments, coupled with the fact that he waited all these years to even mention a plea offer, should cast serious doubt on the credibility of his testimony. And I also note that petitioner hasn't met his burden of establishing that his two attorneys would not have conveyed his acceptance to the prosecutor if he had told them that he wanted to plea. There's a strong presumption that his counsel is competent under Strickland, and petitioner hasn't rebutted it. In this case, there was testimony at the hearing that his first trial attorney, he did not testify, but others who knew him did. They described him as primarily a plea attorney and that he would not have gone to trial if a plea offer had been on the table. And if it was, he would have worked it out. His trial attorney who did testify said it was his practice to talk to his clients about plea offers, and under the circumstances here, he probably would not have taken a chance at trial if a plea offer had existed. So there's no evidence that either of his attorneys would not have conveyed his acceptance of a plea had he told them. And as the Supreme Court in Titlow said, the absence of evidence can't overcome the strong presumption that counsel rendered adequate assistance. And if the attorneys would have gone through the process of discussing the plea with petitioner and he indicated that he wanted to take it, I wonder why they wouldn't have taken the next logical step and told the prosecutor about it. The presumption is that they would, and petitioner hasn't rebutted it. There was also testimony at the hearing that if an offer had been made that this particular trial judge would not have proceeded to trial without first addressing whether the plea was accepted or rejected. So this would have been another check in the plea process if an offer had been made. But the state contends that he hasn't established that an offer was made in the first instance. Habeas relief is an extraordinary remedy, as this court knows, and one that is not warranted here. The Court of Appeals reasonably adjudicated petitioner's jury instruction claim, and he hasn't shown that that ruling was an extreme malfunction. Petitioner's current claim is defaulted, and he hasn't been able to overcome that default. But if this court agreed with the district court and found that the claim had been raised in the state courts, then there was a merits adjudication, and the state urges the court to follow the district court's analysis. Was the evidentiary hearing here in the district court after or before Penholster? The evidentiary hearing was after Penholster. So while we're trying to figure out how this claim might have changed or why it might have changed, does it at least make sense to think about it this way? In terms of the original, what seems to be the original claim, I didn't know about it, my attorney didn't tell me about the plea offer. There's a merits decision on that, and so you don't get an evidentiary hearing as a general proposition anymore if there's a merits decision from the state court on a particular issue, because we can't consider it. But if there isn't a merits decision, then you get an evidentiary hearing, and who knows what comes out of the evidentiary hearing. So at least from a prisoner's standpoint, that would be a reason why a claim might change or morph, would it not, given our current jurisprudence on relying upon evidence outside the state court record. Does that make sense? I'm not sure I understand the question. I'm just going back to where Judge Rogers was to figure out exactly when this claim morphed and then try to figure out, or morphed or changed dramatically, and if so, why. And it might have been, from a prisoner's standpoint, the reason would be to try to get around Penholster, to get an evidentiary hearing to see what you can get into the record that isn't otherwise barred if you get a merits decision. Well, I think Petitioner didn't change the claim until after that. I think the district court was mistaken in thinking that Petitioner was raising a failing to convey the plea offer claim, because that's what he had been raising all along. And the district court, in its order granting a hearing, said that Petitioner has been raising this claim throughout his appeals, and he had been. He didn't raise it in the habeas petition, though. And we did file for a motion for reconsideration of the hearing, but the district court denied that. We went on to a hearing. Petitioner, that very well could be why Petitioner then changed the claim, if that's the court's question, after the hearing or at the hearing. Sort of. It's just speculation. You don't need to spend any more time on it. Okay. I'd be happy to answer any questions from the court. If not, I respectfully ask that... Thank you, counsel. Thank you. Thank you. First of all, the state argues that there's no evidence that a plea existed, but I think just looking at the face of the re-pretrial notice, which is, I believe, page ID number 100, the only explanation for why, the only logical explanation for why, a judge would write manslaughter 5 to 15 and then initial it, is if a plea offer was made. This is not a case of a judge making notes on a pad, speculating that maybe there could be an offer. I see this case as a possible plea with a possible sentence like that. Well, there are a number of explanations in the record as to why that notation  But, again, even though you can construe that in the way in which you want, how do we find that the state court and how they characterize that is contrary to or an unreasonable application of? When there are varying explanations for what that language on that form is. I understand, Your Honor. The state court never really did characterize it. It was certainly discussed at the evidentiary hearing. I understand Judge Ludington later ruled that he should not have granted an evidentiary hearing, but my argument would be that even disregarding everything that came out at the evidentiary hearing, which was some explanation of what it might have meant, some testimony from prosecutors, there was quite an education in the process in Recorder's Court in the late 70s, but even disregarding all that, I think being stuck just with the re-pretrial notice itself together with my client's unrebutted statements in the record as he raised this issue, and he didn't really testify, but he alleged, and it was never disputed or questioned factually, that that did not happen. Now you really lost me. What did not happen? There was no rebuttal to the interpretation that this writing on the re-pretrial notice was evidence that a plea was offered. Sure, the state has contested that all the way along. They didn't early on. In their subsequent briefs they did, but they didn't early on. When he first attached that to his pleadings, there was no response that undercut his interpretation of that in the record. But getting to the Court's other question regarding, it was Defendant's Exhibit B. I have it as page ID 1483-84. A lot of these documents are repeated. But with respect to his claim about the timeliness of implementing the plea and all that, at the end of that letter, which was the letter to the judge, which resulted in the authentication of the re-pretrial notice, he says in the second or third to last sentence, Before the pretrial was rescheduled, I was assured that after Wayne County Prosecutor's Office consented and agreed to the plea offer of manslaughter, a five-year minimum to 15-year maximum, the Court would agree to the plea offer. So that shows that when he wrote this letter in 1999, he did know about the plea offer at the time. He was trying to say that there was a process by which his lawyer makes it happen, the judge makes it happen. His problem was with implementing that plea offer. I think the State falls short in its argument that there is not enough evidence of a plea offer. Go back to where you're finding this additional language because the next paragraph says, It wasn't until after the trial that my trial attorney informed me of the plea offer. I'm talking about... It says that twice. It's a sentence that starts with the word before. It's on the very top of the second page of his letter. Before the pre-trial was rescheduled. Okay. That's his conception of how the plea offer gets implemented, and I think he always claimed that there was a problem with making the plea offer happen. He had two lawyers. Neither one of them made it happen. I don't think it's an issue that is strictly just raised after the evidentiary hearing. Thank you, Your Honor.  Case will be submitted.